IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Rondell Clarke, )
    Plaintiff, )
     )
v. ) 1:14cv1313 (LMB/JFA)
     )
Correctional Officer Washington, et al., )
    Defendants. )

MEMORANDUM OPINION

Rondell Clarke, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendant Washington, a Correctional Officer at Sussex I State Prison ("Sussex I"), used excessive force against him on January 24, 2014. Plaintiff also alleges that defendant Sergeant Stanford[1] ordered Washington to use excessive force against plaintiff. Defendants have filed a Motion for Summary Judgment, accompanied by a memorandum of law and affidavits, as well as the Notice required by Local Civil Rule 7(K). Dkt. Nos. 16, 17, 18.[2] Plaintiff was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On April 20, 2014, plaintiff submitted a Motion to Strike the defendants' Motion for Summary Judgment. Dkt. No. 19. For the reasons that follow, defendants' Motion for Summary Judgment will be granted, and plaintiff's Motion to Strike will be denied.

I. Background

Plaintiff is an inmate at Sussex I. On January 24, 2014, he was housed in housing Unit 4.

---

[1] Plaintiff initially spelled the defendant's name as "Standford." The defendants have informed the Court that the correct spelling of his name is "Stanford."

[2] Defendant Stanford also filed a Motion for Leave to File Responsive Pleadings, in which he requests permission to file a late answer to the complaint. As the Court is granting the defendants' Motion for Summary Judgment, this Motion will be denied, as moot.

Memorandum in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") [Dkt. No. 17], Ex. 2 (Washington Aff.) ¶¶ 3-4. At approximately 10:18 p.m., Officer Washington, who was assigned to the control booth in Unit 4, let plaintiff and offender A. Shaw out of their cells to perform their assigned work assignment of cleaning the housing unit. Id. ¶ 4. Shaw and plaintiff began to physically fight with each other once they left their cells. Id. Plaintiff states that he began fighting with Shaw when Shaw threatened to stab him with a homemade knife. See Am. Compl., at 2. At the time of the fight, Washington did not know why the inmates were fighting. Defs.' Mem., Ex. 2 ¶ 16.

When the fight began, Sergeant Stanford, who was also present in the housing unit, immediately radioed other guards for assistance in breaking up the fight. See Defs.' Mem., Ex. 1 (Stanford Aff.) ¶ 5. Stanford then walked towards plaintiff and Clark, but did not immediately attempt to break up the fight, as he was the only security staff member present on the floor. Id. Both Stanford and Washington ordered plaintiff and Shaw to stop fighting. See id. ¶ 6; Defs.' Mem., Ex. 2 ¶ 5. When the inmates ignored both orders, Washington activated the unit's emergency buzzer. Defs.' Mem., Ex. 2 ¶ 5. According to defendants, both plaintiff and Shaw were familiar with Sussex I procedure, and knew that, when they heard the emergency buzzer, they were to lie on the floor until given an "all clear" signal.[3] Id. ¶ 6. Despite this knowledge, the inmates continued to fight. Washington states that it would have been "impossible" for the inmates not to have heard the buzzer, as it is "very loud," and the unit was quiet at this time of night. Id.

Stanford then told plaintiff and Shaw that, if they continued to fight, Washington would be required to utilize the weapon kept in the control booth. Defs.' Mem., Ex. 1 ¶ 7. The weapon in

---

[3] Plaintiff states, in contrast, that "[t]here is nothing that states what to do when you hear the emergency buzzer." Plaintiff's Motion to Strike ("Mot. to Strike") [Dkt. 19], at "Facts" ¶ 6.

the control booth fires an "impact munition," which "is used in a confined area to compel an offender to comply with direct orders when no alternative method of persuasion is effective and other types of force are not appropriate." Defs.' Mem., Ex. 2 ¶ 7. At Sussex I, the policy is to first fire a 40 MM Single Launcher at the offenders' lower extremities. The 40 MM Single Launcher fires a single rubber round containing pepper spray (known as an "OC round"). If the disturbance continues, an officer should then utilize the 40 MM Multi Launcher, which fires the same OC rounds, but does not require reloading. Id. ¶¶ 7-8.

After plaintiff and Shaw ignored the emergency buzzer, Washington fired a single OC round from the 40 MM Single Launcher. Id. ¶ 7. The inmates did not stop fighting. She then issued another warning and re-activated the emergency buzzer. Id. ¶ 8. The inmates again did not respond. Washington then attempted to fire the 40 MM Multi Launcher, but it jammed and would not discharge. Id. She then provided the inmates with a third verbal warning and again re-activated the emergency buzzer. The inmates again failed to comply, so Washington reloaded the 40 MM Single Launcher and fired another OC round into the general area of the fight. Id. ¶ 9. She then gave the inmates another verbal warning to stop fighting. When they again did not comply, Washington reloaded the 40 MM Single Launcher and again fired a single OC round into the general area of the fight. Id. ¶ 10.

This OC round hit a nearby stairway, bounced, and hit plaintiff in the right side of his neck. Id. Plaintiff and Shaw then stopped fighting, and were separated by other officers who had entered the unit to assist. Id. ¶¶ 10-11. After searching both inmates, officers found a six-inch long knife in Shaw's pocket. Both plaintiff and Shaw were taken to medical for assessment and given disciplinary charges for fighting. Id. ¶ 12. Although plaintiff says he suffered second-degree burns on his neck, see Am. Compl., at 1, there is no medical evidence to support

this contention, and the defendants do not discuss the extent of plaintiff's injuries.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the nonmoving party is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath . . . is not enough to defeat a motion for summary judgment. [The plaintiff] has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.D.C. 1994).

### III. Analysis

Summary judgment in favor of the defendants is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the defendants did not use excessive force in violation of the Eighth Amendment. To the extent that disputes of fact exist, these disputes are not material, and do not preclude the entry of summary judgment in favor of the defendants.

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison administrators from inflicting "unnecessary and wanton infliction of pain" on inmates. Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Because the Eighth Amendment does not prohibit prison officials from all uses of force, only uses of force that actually inflict such unnecessary and wanton pain violate the Eighth Amendment. See, e.g., Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment]."). When analyzing a claim of excessive force, therefore, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Whitley, 475 U.S. at 320.

In answering this question, courts must analyze several factors, including the need for the application of force, the relationship between the need for force and the amount of force used, the extent of the perceived threat to inmates and prison officials, and the extent of injury suffered by an inmate. Whitley, 475 U.S. at 321 (internal citations omitted). By looking to these factors, a court can determine whether the force used could reasonably have been thought necessary, or whether it "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id.; see also Wilkins v. Gaddy, 559 U.S. 34, 36. (2010). When analyzing whether officers reasonably used force in the context of an actual prison disturbance, such as here, courts must defer to the reasonable judgment of prison officials, and may not "substitute their judgment for that of officials who have made a considered choice." Whitley, 475 U.S. at 322; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979) (internal citations omitted) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Based on the uncontested facts presented, it is clear that the defendants' actions met the requirements of Whitley and did not violate plaintiff's Eighth Amendment rights. The record shows that the use of force was necessary at the time that Officer Washington fired OC rounds at plaintiff and Shaw. At the time that Stanford ordered Washington to fire her weapon, plaintiff and Shaw had ignored verbal warnings to cease fighting, as well as an emergency buzzer. In addition, Stanford was the only security officer on the floor at the time. The facts show that Washington and Stanford had no other way to respond to the threat presented by plaintiff and Shaw, and took several preliminary steps to attempt to minimize their use of force before its

application, including repeated verbal warnings and repeated use of the emergency buzzer.

In addition, the defendants used force in response to a potentially severe threat to institutional safety. Plaintiff and Shaw began fighting at approximately 10:18 p.m., when most offenders were in their cells getting ready for the night. There were, as Stanford states, very few officers on the floor to maintain security, and both inmates thus were in danger of sustaining severe injuries. In addition, Washington did not know what the inmates were fighting about at the time of the altercation; she thus could reasonably fear that the fight would escalate to one involving weapons.[4] See Whitley, 475 U.S. at 323 (finding that prison officials' use of force was constitutional when failing to do so "presented unacceptable risks").

Lastly, the severity of the force used was reasonable under the circumstances. Washington fired three single OC rounds at the inmates, pausing between each. She followed procedure and aimed at the inmate's feet, rather than their heads. Although it is undisputed that one of the rounds hit Clarke, defendants aver that the round ricocheted off a stairwell before hitting plaintiff. Although plaintiff disputes this version of events, see Mot. to Strike, at "Facts" ¶ 2, he has not provided any evidence to support his contention. Even were this factual issue in dispute, it is clear from Washington's affidavit that she did not intend to harm or injure plaintiff. The mere fact that plaintiff was injured as a result of the use of force does not, on its own, mean that Washington's use of force was excessive. On the contrary, the facts show that she fired a weapon according to procedure in a good-faith attempt to break up a fight after repeated verbal and other warnings went ignored. This action does not violate the Eighth Amendment.

In response to the defendants' Motion for Summary Judgment, plaintiff states only that "both defendants have [given] conflicting statements through out [sic] their affidavit[s] . . . ."

---

[4] Indeed, Shaw was in possession of a weapon at the time of the fight, although the defendants did not learn of this fact until after the inmates were separated.

7

Mot. to Strike, at "Argument" ¶ 1. The conflicting statements that plaintiff highlights, however, are statements of timing, defendants' ability to observe the incident, and memory. Compare id. at "Argument" ¶ 7 ("Defendant Washington states that [plaintiff] and Shaw stop fighting when the round hit me in the neck. Than [sic] in a different statement she claims that the officers who responded . . . separated and restrained us."), with id. at "Argument" ¶ 10 ("In order for defendant Stanford to state his claim [that bullet hit the stairs before hitting plaintiff] he would have saw the round hit the stairs and floor with his own eyes. However, Stanford states in his own words that he did not know I was hit until I yelled out I am hit."). To the extent that plaintiff highlights disputes of fact, these disputes are not material to the summary judgment analysis. Even taking these disputes of fact into account, the evidence as to the dispositive issue is uncontroverted, and clearly shows that the defendants' use of force was not intended to maliciously cause plaintiff harm, but was intended only to maintain institutional security.

Because both defendants acted "in a good-faith effort to maintain or restore discipline," they did not violate the Eighth Amendment. Their motion for summary judgment therefore must be granted.

### V. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this 12th day of May 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

8